Aukamp et al., Appellants, *v.* Diehm et al.

Argued September 8, 1939. Before KEPHART, C. J., SCHAFFER, LINN, STERN and BARNES, JJ.

*Guy K. Bard* and *W. Hensel Brown,* with them *J. Hay Brown, Jr.,* for appellants.

*Daniel B. Strickler,* for appellees.

OPINION BY MR. JUSTICE LINN, September 25, 1939:

This appeal[1] was from an order refusing, on a tax-payer's bill, to restrain the county commissioners of Lancaster County from submitting a local option referendum to the voters of the townships of East Hempfield, Clay, East Lampeter, Penn, Rapho, Upper Leacock and Colerain and in the borough of Manheim. The proposed referendums were not only pursuant to the Liquor Control Act of 1937, P. L. 1762, 47 PS section 744, considered in the case of *Kram v. Kane et al.,* 336 Pa. 113, but also pursuant to the Beverage License Law of 1937, P. L. 1827, section 32, P. L. 1861, 47 PS section 100n. As to two of the townships, Upper Leacock and Colerain, the questions raised have been disposed of by what was said in *Kram v. Kane et al.,* supra. As to the other five townships and the borough of Manheim, a question is presented that was not raised in the other case.

Section 502 of the Liquor Control Act, P. L. 1792, 47 PS section 744-502, provides: "Whenever electors equal to at least 25 per centum of the highest vote cast for any office in the municipality or township at the last preceding general election shall petition the county commissioners for a referendum on the question of grant-

---

[1] This opinion is now filed for the purpose of stating the reasons for making the following order immediately after argument:

PER CURIAM:

Order affirmed as to the Upper Leacock and Colerain townships and reversed as to East Hempfield, Clay, East Lampeter, Penn and Rapho townships and the Borough of Manheim. The court is of opinion that the petitioners for a referendum vote must be registered voters at the time the petition is filed. An opinion will be filed later giving the reasons for the order.

ing such liquor licenses, the county commissioners shall cause a question to be submitted at the primary . . ." etc. Section 32 of the Beverage License Law has a provision to the same effect. By a stipulation it appears that the "number of registered voters signing petitions for a referendum . . . constitute a number less than twenty-five per centum of the highest vote cast for any office in those respective districts at the last preceding general election." The number of signers was sufficient but they were not all registered. It is contended that unless the signers were registered voters the petition did not comply with the statute. The question then is, What did the legislature mean by the word "electors" in section 502 in one of the statutes, and in section 32 of the other? The Constitution, Article VIII, section 1, defines qualifications of an elector—"subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact." The Election Code of 1937, P. L. 1333, 25 PS sections 2600 et seq., section 701, P. L. 1361, 25 PS section 2811, presumably enacted pursuant to the constitutional provision, prescribes as a qualification that the elector "has complied with the provisions of the acts requiring and regulating the registration of electors." The subject of registration in the districts in question is covered by "The Permanent Registration Act for Boroughs, Towns and Townships," approved April 29, 1937, P. L. 487, 25 PS section 951, which requires registration as a condition of voting. That Act, P. L. 488, 25 PS section 951-2, defines "qualified elector" as "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election."[2]

---

[2] The same definition is contained in the Election Code of 1937, section 102, P. L. 1334, 25 PS section 2602.

We think the legislature used the word "elector" in both the Liquor Control Act and the Beverage License Act in the sense of one qualified to vote at the election and therefore one who, at the time of signing the petition for the referendum, was a registered voter. The alternative holding might result in a referendum on the demand of persons not qualified to vote, a result which we think would have been expressed, if intended. To the suggestion that nonregistered signers of a petition might register before the election, a complete answer is that by requiring registration as a condition of participating in an election, the legislature, by the word "electors," intended petitioners to be persons at that time registered; unless that were held to have been the legislative intention the commissioners would have no way of ascertaining whether the requisite number of signers were electors; if registration at the time of signing be a requisite, the commissioners can immediately determine the fact by consulting the registration lists.

As we are differing on this point from the learned judge[3] who made the order in the court below, it is perhaps fair to say that he made the order in the circumstances presented to him to facilitate bringing the case here for immediate hearing with *Kram v. Kane et al.*, supra, in order that the parties might be advised for the purposes of conducting the election on September 12th. Each party shall pay its own costs.

---

[3] In the course of his order he said: "There is a serious doubt about the legality of the petitions for a referendum vote on the question of local option in six of the eight districts named in the Bill in Equity, because the qualified or registered electors who signed the respective petitions constitute less than twenty-five per cent. of the highest vote cast . . .".