## Hoover et al. v. Blair County Commissioners

*Leo C. Mullen,* for plaintiffs.

*Robert C. Haberstroh,* for defendants.

PATTERSON, P. J., September 10, 1943.—This is a bill in equity brought by plaintiffs to restrain and en-

join defendants, the County Commissioners of Blair County, from submitting a referendum at the primaries to be held September 14, 1943, on the question of: (*a*) Granting malt and brewed beverage licenses to retail dispensers in the Borough of Bellwood; also granting licenses to hotels, restaurants, and clubs for the sale of liquor in the Borough of Bellwood, Blair County; (*b*) granting licenses to hotels, restaurants, and clubs for the sale of liquor in the Township of North Woodbury, Blair County; (*c*) granting licenses to hotels, restaurants, and clubs for the sale of liquor in the Township of Huston, Blair County, as provided by the Beverage License Law of May 3, 1933, P. L. 252, as amended by the Beverage License Law of June 16, 1937, P. L. 1827, and by the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762.

At the hearing of the cause it was stipulated and, in the Borough of Bellwood, agreed that the petition on the question of granting malt and brewed beverage licenses to retail dispensers, by comparison with the registration list of qualified voters in the said borough, contained the names of 295 electors, and the liquor petition contained the names of 299 electors, after eliminating 58 questioned signers.

It was stipulated and agreed that the petition, in the Township of North Woodbury, on the question of liquor licenses, by comparison with the registration list of qualified voters in the said township, contained the names of 105 electors, after eliminating 70 questioned signers.

In the Township of Huston, it was stipulated and agreed that 38 of the signers, on the question of liquor licenses, were qualified electors, after eliminating 31 questioned signers.

Plaintiffs complain that the affidavits filed with the petition for referendum on the question of granting malt and brewed beverage licenses to retail dispensers, as well as liquor licenses, in the Borough of Bell-

wood, were not made by the person who circulated the several petitions. The affiant was called for examination and testified that, while he had not circulated the petitions personally in each instance, he had supervised and directed the circulation of the petitions and had checked each one daily with the parties who did circulate them, and that the contents of the several affidavits were true and correct, to the best of his knowledge and belief.

Plaintiffs further object to the petitions on the ground that the jurat on the affidavits was dated July 15, 1941. Defendants moved the court for permission to amend the jurat and called as a witness the justice of the peace who administered the affidavits. He testified that the affidavit, which was a typewritten form, was taken by him on July 15, 1943; that he had overlooked the printed form on which it was dated in 1941. All the petitioners who signed the respective petitions as to both beer and liquor in the Borough of Bellwood dated their signatures during the latter part of June 1943 and July 14, 1943. The court is satisfied that the year 1941 was a mere oversight by the justice of the peace and in fact the affidavit was taken July 15, 1943, and the record was amended accordingly.

On the other hand, defendants contend that the affidavit is substantially correct, and, further, that the affidavit is a surplusage and is not controlling for the reason that the act of assembly relative to petitions for submission of referendums does not require an affidavit.

Plaintiffs' complaint that the petition should have been rejected by the commissioners because there was no proof of the signatures, residence, occupation, and dates is not well taken. All the electors whom it has been agreed signed the petitions also wrote in their residence, their occupation, and date of signature. They also recite the fact that they were electors in the Borough of Bellwood. The commissioners were fully justi-

fied in accepting these facts as sufficient prima facie evidence that the petition was made in accordance with the act of assembly. Further than this, it is shown by the testimony that the commissioners' chief clerk caused the petitions to be checked to ascertain whether they had the required 25 percent of the electors at the last general election before they adopted a resolution authorizing the submission of the question. The commissioners performed every duty imposed upon them by the act of assembly. The petitions as to both beer and liquor in the Borough of Bellwood conform to all the provisions of the Beverage License Law of June 16, 1937, P. L. 1827, 47 PS §100 (n), and of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS §744-501, 502. See Aukamp et al. v. Diehm et al., 336 Pa. 118, and Kram v. Kane et al., 336 Pa. 113.

Plaintiffs also contend that the "highest vote cast for any office in the municipality or township at the last preceding general election" should be based upon the number of votes cast for the office of assembly in 1942, at which the voters in the several municipalities and townships in which petitions were circulated voted for two members of the General Assembly. Plaintiffs argue that the office of General Assembly is an office and that the total number of votes cast for all the candidates for that office should be counted, notwithstanding the number of candidates to be elected. Defendants contend that the law does not contemplate a calculation made in this manner, but that the law contemplates and intends that "the highest vote cast for any office" is the total vote for all candidates for any office to which one person is to be elected, such as Governor, Lieutenant Governor, or other single office. In the Borough of Bellwood the total number of votes cast for four candidates for assembly, two of whom were to be elected, equaled 1,145. The highest vote cast for any one assembly candidate was 541. The

highest vote cast for all the candidates for the office of Governor was 624. Likewise the highest vote cast for all the candidates for member of Congress at large was 624. Defendants contend that the proper method of ascertaining 25 percent of the highest vote cast is to be based upon the number of votes cast for all the candidates for the office of Governor, which was 624. In either event the two petitions in the Borough of Bellwood contained, respectively, 299 on the liquor petition, and 295 on the malt and brewed beverage petition, both of which numbers exceed 25 percent of the total vote cast, on the basis of either method of calculation. Therefore, this question is not important insofar as the Borough of Bellwood petitions are concerned. However, the court is of the opinion that 25 percent of the "highest vote cast for any office" in the act of assembly means the highest vote cast for any office to which one candidate is elected. It certainly was not the intention of the legislature to require 25 percent of the total vote cast for all the candidates, such as assembly, where two or more candidates may have been voted for. Under such method it would be possible to require the signatures of more than the total number of electors found in any township or municipality in order to obtain 25 percent of the votes cast at the last general election. Therefore, the temporary injunction restraining and enjoining the county commissioners from submitting the several questions for the sale of malt and brewed beverages and the sale of liquor in the Borough of Bellwood is dissolved.

The same contention is made by plaintiffs concerning the 25 percent of the votes cast "for any office" at the last general election in the Township of North Woodbury and the Township of Huston, although it is agreed that the stipulated number of electors on each petition contains 25 percent of the votes cast for all the candidates for the offices of Governor and Lieutenant Governor, respectively, which were the highest single offices to be filled in the respective townships.

Plaintiffs object to the petitions from both North Woodbury and Huston Townships on the ground that the form of the petitions requests the board to grant a referendum on the question of granting licenses, which question shall be in the following form: "Do you favor the granting of liquor licenses for the sale of liquors in the Township of North Woodbury, County of Blair, Pennsylvania," with the word "Yes" printed in the square at the upper right-hand corner, and the word "No" printed in the square opposite the question, in the lower right-hand corner. The form of each petition complied with the act of assembly so far, but each petition also contained an "X" or pencil mark, indicating a negative vote, opposite the word "No" when it was filed in the commissioners' office. Presumably the petitions contained the mark "X" opposite the word "No" when they were signed. Therefore we must conclude that petitioners requested the commissioners to submit a form of ballot in accordance with the petition, in which petition a negative vote was indicated by marking "X" after the word "No". If the commissioners had carried out that request then the ballot would be illegal, as it would have indicated on its face a negative expression by the voter. This would be clearly erroneous as it would interfere with the free expression of the will of the voters, and it is the opinion of the court that a referendum would be illegal if submitted in such form. Nor would the authorities submitting the referendum have any right to change the form of the question from that form contained in the petition. This was a fatal error on the part of the petitioners: Fisher et al. v. County Commissioners of the County of Huntingdon, opinion by Judge Fetterhoof, August 1943. Therefore, the commissioners are hereby restrained and enjoined from submitting a referendum on the question of granting licenses to hotels, restaurants, and clubs for the sale of liquor for consumption on the premises, in the Township of North

Woodbury. Likewise the commissioners are hereby restrained and enjoined from submitting a referendum on the question of granting licenses to hotels, restaurants and clubs for the sale of liquor for consumption on the premises, in the Township of Huston.

*Decree*

Now, September 10, 1943, in consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

That the temporary injunction issued August 28, 1943, enjoining and restraining Herbert S. Bolger, Joseph A. Dickson, and Daniel S. Brumbaugh, Commissioners of the County of Blair, or either of them, their agents, employes, deputies or servants, from granting a referendum on the question of granting malt and brewed beverage licenses to retail dispensers, and on the question of granting liquor licenses in the Borough of Bellwood, is hereby dissolved.

And the commissioners are to proceed in accordance with the resolution adopted authorizing submission of the said questions in the said borough, to the qualified electors thereof at the primary election to be held September 14, 1943.

It is also ordered and decreed that the temporary injunction issued August 28, 1943, enjoining and restraining Herbert S. Bolger, Joseph A. Dickson, and Daniel S. Brumbaugh, Commissioners of the County of Blair, or either of them, their agents, employes, deputies or servants, from granting a referendum on the question of sale of liquor in the Township of North Woodbury and in the Township of Huston, is hereby made permanent insofar as the said Township of North Woodbury and the said Township of Huston are concerned.

That the costs of this proceeding shall be borne by plaintiffs and defendants equally.