## In re Smiley Nomination Petition

*W. T. Corbett,* for petitioner.
*Rhoads & Sinon,* contra.

KREIDER, J., March 10, 1952. — On February 18, 1952, Robert W. Smiley filed with the Secretary of the Commonwealth of Pennsylvania his petition asking that his name be certified to the county board of elections, to be printed on the official primary ballot of the Republican Party as a candidate for the office of representative in Congress from the twenty-ninth congressional district of Pennsylvania. This district is in Allegheny County. A part of it is within the City of Pittsburgh and the remainder outside of it. On February 25, 1952, Samuel Walker, a duly registered and qualified elector of the congressional district filed a petition requesting this court to strike off the nomination petition of Robert W. Smiley on the ground, inter alia, that it did not contain the signatures of the required number of qualified electors. Due notice of the time and place of hearing was given to the Secretary of the Commonwealth and the respondent Smiley. The latter appeared at the hearing in person and by counsel.

The statutory law governing this case is found in the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2601, and insofar as it relates to residents of the City of Pittsburgh, a second class city, in The Permanent Registration Act in Cities of the Second Class of May 25, 1937, P. L. 814, 25 PS §807, and with respect to voters living outside of the City of Pittsburgh, in The Permanent Registration Act for Boroughs, Towns and Townships of April 29, 1937, P. L. 487, as amended, 25 PS §951-1.

Respondent-candidate's nomination petition contained the signatures of 218 supposedly qualified elec-

tors. The Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2872, provides:

"Section 912. Number of Signers Required: . . . Nomination Petitions of Candidates at Primaries Shall Be Signed.

"(c) If for the office of Representative in Congress . . . by at least *two hundred registered and enrolled members* of the proper party . . ." (Italics supplied.)

By stipulation of counsel for respondent and the objector it is agreed that 13 of the signatures on the petition are invalid, leaving a total of 205 signatures to be considered. Before the petition may be set aside, it is therefore necessary to determine whether it contains six additional signatures that are invalid.

Section 102($u$) of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, 25 PS §2602($u$), defines the words "registered and enrolled member of a political party" as:

"Any qualified elector who shall be registered according to political designation, in accordance with the provisions of the registration acts."

Subsection ($t$) of the same section defines "qualified elector" as:

"Any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise *qualified by continued residence in his election district,* shall obtain such qualifications before the next ensuing election." (Italics supplied.)

Section 701 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §2811, requires as a qualification for voting that the elector "has complied with the provisions of the acts requiring and regulating the registration of electors".

The Permanent Registration Act of 1937, P. L. 487, sec. 2($k$), 25 PS §951-2, declares that:

"(k) 'Qualified elector' shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by *continued residence in his election district,* shall obtain such qualifications before the next ensuing election." (Italics supplied.)

And in subsection (*p*) of section 2 "District" is defined as:

"(p) 'District' shall mean any election district or precinct of a borough, town or township."

The Constitution of Pennsylvania, article VIII, sec. 1, defines the qualifications of an elector, "*subject,* however, *to such laws requiring and regulating the registration of electors as* The General Assembly may enact." (Italics supplied.)

Section 18 of The Permanent Registration Act for Boroughs, Towns and Townships of April 29, 1937, P. L. 487, 25 PS §951-18, covers the subject of registration in such districts and provides in substance in subsections (*a*) and (*c*) that every person claiming the right to be registered as an elector must appear in person before the proper registration official and answer under oath or by affirmation the questions required by this Registration Act, including:

"(c) (1) The surname of the applicant; (2) his Christian name or names; (3) his occupation; (4) the street or road and number, if any, of his residence; (5) if his residence is a portion only of the house, the location or number of the room or rooms, apartment, flat or floor which he occupies; (6) the date his residence in the district began; (7) his residence address when he last registered, and the year of such registration; ..."

Section 19 of the Act of April 29, 1937, P. L. 487, 25 PS §951-19, is entitled "Who May Register; Who May Vote." It provides that:

"Every person living in a borough, town or township who shall possess all the qualifications of an elector as provided in the Constitution and laws of this Commonwealth, or who by continued residence in his election district will have obtained such qualifications before the next ensuing election, shall be entitled to be registered as herein provided. From and after the first day of September, one thousand nine hundred thirty-seven, *no person shall be permitted to vote* at any election or primary held in any borough, town or township *unless he shall have been so registered*, except by order of a court of common pleas as hereinafter provided; and no elector so registered shall be required to register again for any election or primary while he continues to *reside at the same address*, unless his registration is cancelled by reason of his failure to vote during a period of two years as hereinafter provided." (Italics supplied.)

Counsel for the objector and respondent have also stipulated certain facts concerning nine other signers, leaving to the court to determine whether these persons were qualified electors and entitled to sign this nomination petition.

These nine signers may be classified as follows:

*"Group A"*, consisting of two (2) persons:

Louis J. Feffer and E. A. Ochler, who registered as Republicans one day *after* signing the nomination petition. They were not registered Republicans on the date they signed the petition but were registered before it was filed.

*"Group B"*, consisting of five persons;

Shirley M. Grossman, Mary E. Thunell, Ada Ruth Kvatsak, Charles D. Lewis and William K. Hamberg, who were registered and enrolled Republican voters of an election district in the twenty-ninth congressional district but subsequently moved into another election district in the congressional district and at the time of signing the nomination petition had not transferred

their registration to the district in which they were then residing.

It is stipulated that prior to her marriage Shirley M. Grossman was Shirley M. Hardt and registered in Richland Township, Allegheny County, as a Republican in her single name. She is not registered from her present address in Ross Township, although she has resided there since her marriage in August 1950; nor is she registered anywhere in her married name.

The petition shows that Ada Ruth Kvatsak signed it "2/14/52". It is stipulated that at the time she signed the petition she was registered from her former address in the Borough of West View but transferred her registration February 18, 1952, four days after signing this petition, to her present address in McCandless Township. West View Borough and McCandless Township are separate and distinct municipalities within the twenty-ninth congressional district.

*"Group C"*, consisting of two persons:

E. W. Kretzer and Elva Scherling, who failed to notify the registration commission that they had moved from their previous residence from which they were registered to another residence *within the same voting precinct.*

With respect to the signatures of Feffler and Ochler in "Group A", who registered one day *after* signing this nomination petition, we hold that since respondent's petition was required to be signed by "registered and enrolled members of the proper party" (section 912 of the Pennsylvania Election Code of 1937, P. L. 1333, 25 PS §2872) and the two signers were not so registered, their signatures are invalid.

In Aukamp et al. v. Diehm et al., 336 Pa. 118, 120, 121 (1939), the Supreme Court had before it the construction of the word "elector" relative to the number of signatures of "electors" required to place a local option referendum on the ballot. The court said:

"We think the legislature used the word 'elector' in both the Liquor Control Act and the Beverage License Act in the sense of one . . . who, at the time of signing the petition for the referendum, was a registered voter."

In Castle Shannon Borough Annexation Case, 160 Pa. Superior Ct. 475 (1947), it was held that a "qualified elector" is one who has actually registered.

We shall consider next the five persons listed in "Group B" who are registered Republican voters of an election district in the twenty-ninth congressional district but subsequently moved into another election district in the same congressional district and at the time of signing had not transferred their registration to the district in which they were then living. It is agreed that in no case had the change of address of the signers been placed on record with the registration commission prior or subsequent to the date of signing the petition, except that of Ada Ruth Kvatsak, who recorded her change of address on February 18, 1952, four days after she signed the petition. Respondent strenuously contends that these five signers are "registered and enrolled members of the proper party", that all of them live in the same congressional district where they resided when they were registered and therefore they are qualified electors and entitled to sign the petition, even though they no longer reside in the voting district from which they are registered.

If this view is correct, then an elector could move from a district in which he had registered to a district far removed therefrom in another county but in the same congressional district and there sign a nomination petition, though still registered in the former district. It would be practically impossible for any one to determine the validity of the signatures on such a petition within the seven days allowed after the last

day for filing. We do not believe the legislature intended such a result in view of the detailed data the elector when registering must furnish concerning, inter alia, his place of residence, the length of time he has resided there; the requirement that "(3) He or she shall have resided in the election district where he or she shall offer to vote at least two months immediately preceding the election" (Election Code of 1937, P. L. 1333, sec. 701, 25 PS §2811), and his exemption from registering again "while he continues to reside at the same address", as set forth in the acts above cited.

Respondent further contends that the time in which the signers in this group had to notify the registration commission of their change of address had not expired at the time they signed the petition and that since these persons had the right to give their removal notice up to at least 50 days prior to the next April primary election, to wit, up to March 3, 1952, they are lawfully qualified voters entitled to sign this petition.

The law with respect to the elector's duty to give such removal notice is set forth in the Act of June 20, 1947, P. L. 752, sec. 1, 25 PS §951-26 (a), as follows:

"Each removal notice, to be effective, must be received at the office of the commission at least fifty days prior to any primary or general election held in even-numbered years, and at least thirty-five days prior to any municipal election held in odd-numbered years, which warning shall also be contained on the removal notice."

It appears to the court that this removal notice is a mandatory provision of the Election Law and that an elector cannot vote in the voting district to which he has moved unless he first files such removal notice. Since he cannot vote until he does so, we think he is not a "qualified elector", and is not entitled at that stage to sign a nomination petition. The fact that an elector might decide after signing this petition to file his

removal notice some time on or before March 3, 1952, and thus qualify himself to vote in his new election district at the April primary, does not persuade us that he was a "qualified elector" entitled to sign this nomination petition on or before February 18, 1952. To adopt respondent's contention would mean that at the time a petition is filed with the Secretary of the Commonwealth, neither that official nor any other person could be certain whether the petition contained the required number of signatures of legally qualified electors because they would have no means of knowing whether such signers would or would not file the required notice of change of address with the proper registration officials on or prior to March 3, 1952, at which time the last day for filing objections to the petition, February 25, 1952, would have expired.

In Aukamp et al. v. Diehm et al., 336 Pa. 118, 121 (1939) the Supreme Court said:

"To the suggestion that non registered signers of a petition might register before the election, a complete answer is that by requiring registration as a condition of participating in an election, the *legislature*, by the word 'elector' *intended* petitioners *to be persons at that time registered;* unless that were held to have been the legislative intention the commissioners would have no way of ascertaining whether the requisite number of signers were electors; if registration at the time of signing be a requisite, the commissioners can immediately determine the fact by consulting the registration lists." (Italics supplied.)

Likewise, in Castle Shannon Borough Annexation Case, 160 Pa. Superior Ct. 475, 478, 479 (1947), it was held that a *"qualified elector" is one who has actually registered,* not merely one who is eligible for registration as a voter.

In that case, Mt. Lebanon Township, Allegheny County, contended that the petition to detach land from

it and annex it to the contiguous Borough of Castle Shannon was signed by fewer than 80 percent of the qualified electors residing in the territory. The signatures of six persons appeared on the petition. In all, there were 11 individuals residing within the limits of the territory involved. Mt. Lebanon Township contended that all 11 residents were "qualified electors" because *eligible* for registration as voters and that therefore the proceeding was vitiated since fewer than 80 percent of the qualified electors signed the petition. The township further contended that two other persons—Robert McKelvey and his wife—living on the land, who did not sign the petition, were qualified electors.

The testimony disclosed that McKelvey's residence before he entered the military service was and since his discharge had been within the territory involved. *He never registered as a voter in the township before or during the term of his military service.* There was no testimony that his name was ever placed on a military ballot list either by himself or at his request. The Superior Court held that "since Robert McKelvey was never registered, prima facie, at least he was not an eligible voter" and that even though his name had been placed on a military ballot list or if he had been present at an election in his district at any time, these facts, though giving him the limited status of a "qualified elector in actual military service" *would not have made him a "qualified elector" in the unlimited sense* contemplated by the Annexation Act of June 19, 1939, P. L. 430, 53 PS §19092-312.1 to 312.6.

In the instant case we are constrained, therefore, to hold that the five signers in "Group B" were not "registered and enrolled members of the proper party" qualified to sign respondent's nomination petition in the unlimited sense contemplated by section 912 of the Pennsylvania Election Code of 1937, P. L. 1333, 25 PS

§2872 and the other applicable statutes heretofore cited. Therefore, these five signatures must be declared invalid.

Since we hold that the seven signatures in Groups A and B are invalid and the parties have agreed that 13 additional signatures are likewise invalid, making a total of 20, it follows that respondent's petition containing 218 signatures must be set aside because it contains only 198 of the 200 signatures required by law.

In arriving at our conclusion, we have not considered the objector's vigorous contention that the signatures of E. W. Ketzer and Elva Scherling in "Group C" are invalid because they had not notified the registration commission of their removal from their previous residence from which they were registered to another residence within the same voting precinct where they resided when they signed the petition; neither have we invalidated the signature of Shirley M. Grossman as perhaps we might have, on the ground that she never changed her registration from her single name to her married name (Castle Shannon Borough Annexation Case, 160 Pa. Superior Ct. 475, 478) nor have we considered the numerous instances of addresses and occupations inserted by some one not in the presence of various signers who theretofore had merely made ditto marks in these columns on the petition. This supplementary data, however, was inserted in good faith and was readily assented to thereafter by all the signers affected.

Having determined that respondent's nomination petition is invalid, we enter the following

### Order

And now, to wit, March 10, 1952, for the reasons set forth above, the nomination petition of Robert W. Smiley as a candidate for the office of representative

in Congress from the twenty-ninth congressional district of Pennsylvania is hereby set aside. The prothonotary is directed to notify forthwith the parties hereto or their counsel of this order and also to certify and forward a copy thereof to the Secretary of the Commonwealth of Pennsylvania.